UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED:  09/01/2022

MOISES MARTINEZ,

                Petitioner,

                v.

DONALD UHLER, Superintendent, Upstate
Correctional Facility,

                Respondent.

No. 19-CV-6928 (RA) (SLC)

ORDER ADOPTING REPORT
AND RECOMMENDATION

RONNIE ABRAMS, United States District Judge:

In this petition for a writ of habeas corpus (the "Petition") filed pursuant to 28 U.S.C. § 2254, *pro se* Petitioner Moises Martinez challenges his conviction in New York State court for manslaughter in the first degree following a guilty plea.  Magistrate Judge Sarah L. Cave issued a Report and Recommendation (the "Report" or "R&R") recommending the dismissal of the Petition, to which Petitioner has objected.  For the reasons that follow, the Court adopts the Report's recommendation that the Petition be dismissed.

I.     **Factual Background**

The Court draws the following facts from the Report and the state court record.

On July 21, 2013, New York City police officers on patrol saw a livery car that was parked on the sidewalk, with its open trunk facing an open door to an apartment building.  R&R at 2.  Martinez was standing near the car; when the officers approached and questioned him, he gave multiple different explanations for the car's placement.  The officers observed that Martinez appeared nervous, sweaty, and agitated.  *Id.*  They directed Martinez to move the car.  *Id.*  Suspecting a drug transaction, the officers followed Martinez as he drove around the

neighborhood.  *Id.* at 2-3.  He eventually parked the car near its original location and entered the apartment building.  *Id.* at 3.  Twenty minutes later, the officers knocked on the door and Martinez came onto the sidewalk when the officers summoned him outside.  *Id.*

The officers asked Martinez again about the placement of his car and about his previous statements; Martinez continued to appear "extremely agitated and nervous."  *See id.*  They then asked Martinez if he was alone; he responded first in the affirmative, but then stated that his wife was in the building.  When the officers asked Martinez to call her, he replied that they could check to see that she was inside.  He then, according to the officers, said "la ahorqué"— Spanish for "I choked her" or "I strangled her."  *Id.*

Two officers entered the apartment to check on the welfare of Martinez's wife.  In one room, they discovered a large garbage bin that contained something wrapped in blankets and tied with a cord.  *Id.* at 3-4.  Looking inside the bin, an officer saw what appeared to be skin.  *Id.* at 4. He cut the cord and a limb fell out.  The officers handcuffed Martinez; while being handcuffed, Martinez allegedly said, "la maté"—which an officer understood to be Spanish for "I killed her." *Id.*

At the police station, Martinez made a written statement in Spanish to a detective.  *Id.*  In that statement, he explained that he and his wife had had an argument that evening regarding custody of their children if they separated.  *Id.*  During the argument, his wife allegedly fell to the ground and began hitting her head on the floor.  *Id.*  Martinez placed his hands over his wife's mouth, purportedly to prevent her from hurting herself.  *Id.*  He said that his hands were over her mouth for three to five minutes—until he saw blood.  *Id.*  After seeing that his wife was not responding, he went for a walk to clear his head.  *Id.*  Upon his return, she was still unresponsive.

*Id.*  Martinez then took a shower, watched television, picked up and dropped off a passenger, and returned to the apartment, where his wife was still on the ground.  *Id.*

On July 26, 2013, Martinez was indicted for murder in the second degree and manslaughter in the first degree by a Bronx County Grand Jury.  *Id.* at 5.  He subsequently moved to suppress the physical evidence found in his apartment—including his wife's body—and the statements he had made before and after his arrest.  *Id.*  The state court denied the motions to suppress.  *Id.* at 5-6.

On June 13, 2016, represented by counsel, Martinez pleaded guilty to manslaughter in the first degree pursuant to a plea agreement.  *Id.* at 6.  During the plea proceeding, Martinez also signed a waiver of his right to appeal, which had been translated into Spanish.  *Id.*; *see* Plea Hearing Tr. at 3:1-12 (Dkt. 12).  The waiver specifically stated: "I understand that the right to appeal would have allowed me, with the assistance of an attorney, to have a higher court review my conviction and sentence, particularly the excessiveness of my sentence and the resolution of any suppression motion that I may have made."  State's MOL at 6 n.3.  During the plea allocution, at which Martinez was assisted by an interpreter, the court asked Martinez both whether his guilty plea was knowing and voluntary and whether he was waiving his right to appeal; Martinez answered both in the affirmative in two separate exchanges.  R&R at 6; *see* Plea Hearing Tr. at 5:13-21.  He was sentenced to twenty years' imprisonment and five years' supervised release.  R&R at 7.

## II.   Procedural History

In November 2017, Martinez appealed his conviction to the Appellate Division, First Department.  In his appeal brief, he argued that the trial court erred in denying his motion to suppress.  *See* Direct Appeal Br.  He also contended that his appeal waiver was invalid—but on the face of his brief, it appears that this argument was made for the specific purpose of establishing

that his Fourth Amendment claim could be considered on the merits.  That is, it was not characterized as a freestanding due process claim.  *See id.* at 13-17 (framing the validity of the appeal waiver as a threshold issue within the Fourth Amendment argument).[1]

On May 22, 2018, the Appellate Division denied Martinez's appeal.  Its reasoning reads, in full, as follows:

> Defendant made a valid waiver of his right to appeal.  The oral colloquy, which avoided conflating the right to appeal with the rights forfeited by pleading guilty, met the minimum standards for such a colloquy (*see People v. Bryant*, 28 N.Y.3d 1094 (2016)).  Defendant also signed a written waiver, and the court confirmed that defendant understood the document and had discussed it with counsel.
>
> The valid waiver forecloses review of defendant's suppression and excessive sentence claims.  Regardless of whether defendant made a valid waiver of his right to appeal, we find that the hearing court properly denied defendant's suppression motion, and we perceive no basis for reducing the sentence.

*People v. Martinez*, 161 A.D.3d 593, 593-94 (N.Y. App. Div. 2018).  On September 26, 2018, the New York Court of Appeals denied Martinez's request for leave to appeal.  *People v. Martinez*, 111 N.E.3d 1120 (N.Y. 2018).  Martinez, at this point proceeding *pro se*, then filed the instant federal habeas petition, arguing that his Fourteenth Amendment due process rights had been violated in connection with the appeal waiver and that his Fourth Amendment rights had been violated through the admission of his statements and of physical evidence.

In the Report, Judge Cave recommended that the Petition be denied in its entirety.  In particular, she found that Martinez's appeal waiver was knowing and voluntary; that the valid appeal waiver foreclosed review of his Fourth Amendment claim; and that his Fourth Amendment claim was not cognizable on habeas regardless of the validity of the waiver.  Martinez timely filed objections.

---

[1] Martinez also challenged the length of his sentence on direct appeal but does not renew that claim on habeas.

**LEGAL STANDARD**

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  A court may accept portions of a report to which no objections are made as long as those portions are not "clearly erroneous." *Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 513 (S.D.N.Y. 1997) (citing Fed. R. Civ. P. 72(b)).  A court must, however, undertake a *de novo* review of those portions to which specific objections are made. *See* § 636(b)(1); *Greene*, 956 F. Supp. at 513.  "Objections of *pro se* litigants are generally accorded leniency and construed to raise the strongest arguments that they suggest." *Quinn v. Stewart*, No. 10-CV-8692 (PAE) (JCF), 2012 WL 1080145, at *4 (S.D.N.Y. Apr. 2, 2012).[2]

**DISCUSSION**

Martinez raises two arguments in his Petition.  First, he claims that his Fourteenth Amendment due process rights were violated because his "appeal waiver was not scrutinized closely and narrowly applied."  Petition at 5.  Specifically, he asserts that the state trial court "did not convey that the right to appeal was separate and distinct from [the] right automatically forfeited upon a plea of guilt, and . . . failed to fully inquire into the understanding of petitioner's right to appeal."  *Id.*  Second, he argues that his Fourth Amendment rights were violated through the introduction of his statements to the police officers and physical evidence obtained from his home. *See id.* at 7.

A threshold question is whether Martinez's claims are best analyzed as two independent claims or as one multi-part claim—that is, whether the validity of his appeal waiver is only significant for the purpose of determining whether his Fourth Amendment claim is procedurally

---

[2] Unless otherwise noted, case quotations omit all internal citations, quotation marks, alterations, and footnotes.

barred, or whether he may properly raise a freestanding Fourteenth Amendment claim. To be sure, Martinez styles his petition as raising two distinct constitutional claims. But given that Martinez's due process argument was a threshold point within his Fourth Amendment claim on direct appeal, the Court construes the due process argument in Martinez's Petition not as a freestanding claim, but rather as a threshold issue of his Fourth Amendment claim.[3]  In any event, even if Martinez's Petition is better assessed as raising a freestanding due process claim, the Court finds that such a claim would fail on the merits for the same underlying reasons.

In his objections, Martinez contends that the "state court procedurally barred [his] waiver of appeal claim" and that the Report thus erred in failing to analyze this claim under the "cause

_____

[3] Also informing the Court's decision is the uncertainty as to whether the waiver of the right to appeal even has a constitutional dimension such that a claim based on the validity of that waiver, without more, is cognizable on habeas. As one district court in this Circuit has explained:

> Even if petitioner had presented a federal constitutional issue as to the waiver of an appeal to challenge his sentence, he could not meet the standard under 28 U.S.C. § 2254. That statute requires petitioner to demonstrate that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The decision of a state court is "contrary" to clearly established federal law within the meaning of § 2254(d)(1) if it is "diametrically different" from, "opposite in character or nature," or "mutually opposed" to the relevant Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (internal quotation marks omitted). A state court decision involves "an unreasonable application" of clearly established federal law if the state court applies federal law to the facts of the case "in an objectively unreasonable manner." *Brown v. Payton*, 544 U.S. 133, 141 (2005).

> Yet the Supreme Court has never addressed the requirements of a valid waiver to appeal a sentence, which means that habeas corpus review is not available. *See Yarborough v. Alvarado*, 541 U.S. 652, 666-68 (2004); *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (circuit authority cannot be the basis of habeas relief). Indeed, under federal law, the need to orally advise a defendant that he is waiving his right to appeal arises only by rule, not constitutional provision. *See* Fed. R. Crim. P. 11(b)(1)(N).

> For its part, the Second Circuit has suggested that while the validity of a waiver as "knowing and voluntary" is similar to the standard for a valid waiver of constitutional rights, the waiver of a right to appeal is not itself constitutional. "Every circuit to consider the issue has concluded that waivers of the right to appeal a sentence, like waivers of constitutional rights, are invalid unless they are voluntary and knowing." *U.S. v. Ready*, 82 F.3d 551, 556 (2d Cir. 1996).

*Veliz v. Griffin*, No. 17-CV-0824 (BMC), 2017 WL 836560, at *3 (E.D.N.Y. Mar. 2, 2017).

and prejudice" standard.  Objections at 1.  But, as noted above, Martinez did not appear to raise a freestanding due process claim before the Appellate Division, meaning that there was no such claim for that court to rule on, either on procedural grounds or on the merits.  Rather, the state court's decision regarding the voluntariness of Martinez's appeal waiver constituted an adequate and independent state law ground for the denial of his *Fourth Amendment* claim.  Accordingly, his Fourth Amendment claim may be reviewed by this Court only if he has shown cause and prejudice for that default.  Because he has not, his Petition fails.

A federal habeas court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment," *Coleman v. Thompson*, 501 U.S. 722, 729 (1991), "unless the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," *id.* at 750.  A claim is procedurally defaulted when "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar."  *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005).  And it is well-settled that New York's law "allowing defendants to waive their right to appeal as part of a plea agreement, as long as the waiver is made voluntarily and is knowing and intelligent, is [such] an adequate and independent state ground that bars habeas review."  *Burvick v. Brown*, No. 10-CV-5597 (JFB), 2013 WL 3441176, at *6 (E.D.N.Y. July 9, 2013).  *See also Guaman v. Racette*, No. 14-CV-5160 (CS) (LMS), 2016 WL 901304, at *5 (S.D.N.Y. Feb. 5, 2016) ("Courts in this circuit have consistently held that a petitioner's waiver of the right to appeal is an adequate and independent state ground for denying habeas corpus relief."); *Alvarez v. Yelich*, No. 09-CV-1343 (SJF), 2012 WL 2952412, at *5 (E.D.N.Y. July 17, 2012) (collecting cases); *Whitted v. Stallone*,

No. 11-CV-7569 (KMK) (LMS), 2015 WL 10574264, at *12 (S.D.N.Y. Aug. 6, 2015), *adopted by* 2016 WL 1268278 (S.D.N.Y. Mar. 30, 2016) (concluding that a claim "was decided by the state court on adequate and independent state grounds" when it was "denied by the state court through enforcement of Petitioner's waiver of appellate rights").

Specifically, federal courts in this Circuit have repeatedly held that valid appeal waivers procedurally bar consideration of Fourth Amendment claims such as Petitioner's. *See, e.g.*, *D'Onofrio v. Annucci*, No. 16-CV-1740 (VB) (PED), 2018 WL 6251367, at *13 (S.D.N.Y. Oct. 23, 2018), *adopted by* 2018 WL 6250660 (S.D.N.Y. Nov. 29, 2018) ("[T]he Second Department held that petitioner's valid waiver of his right to appeal precludes appellate review of his challenge to the hearing court's suppression ruling. Such a ruling—denying appellate review based upon a waiver of the right to appeal—is generally viewed as an adequate and independent state ground for denying habeas relief."); *Persaud v. Kirkpatrick*, No. 15-CV-5645 (JMA), 2019 WL 2743588, at *7 (E.D.N.Y. July 1, 2019) (finding that the Appellate Division's holding that "defendant's valid waiver of his right to appeal preclude[d] appellate review of his challenges . . . to the trial court's suppression determination" was "based on independent and adequate grounds of New York state law"); *Kilpatrick v. Barkley*, No. 07-CV-6051 (WHP) (HBP), 2011 WL 1842749, at *8 (S.D.N.Y. Apr. 15, 2011), *adopted by* 2011 WL 2175834 (S.D.N.Y. May 6, 2011) ("Waiver of the right to appeal an adverse suppression ruling in state court also waives the opportunity for federal habeas review of that ruling.").

Of course, it is not enough to conclude that an adequate and independent state law ground exists in the abstract: the state court's reliance on state law "must be clear from the face of the opinion." *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000). But that reliance is clear here, as the Appellate Division expressly held that Martinez's appeal waiver was valid and

that the waiver accordingly "foreclose[d] review of [his] suppression . . . claim[]." *Martinez*, 161 A.D.3d at 594.  Moreover, in its finding that Martinez's waiver was valid, the Appellate Division cited *People v. Bryant*, 68 N.E.3d 60 (N.Y. 2016), a case that cited New York law, rather than federal constitutional law, in discussing the validity of appeal waivers.  Because the Appellate Division clearly rested its denial of Martinez's Fourth Amendment suppression claim on state grounds, Martinez must establish cause and prejudice for that default.[4]  To show cause, he must establish that his waiver of the right to appeal was not knowing and voluntary.  *See Guaman*, 2016 WL 901304, at *5; *D'Onofrio*, 2018 WL 6251367, at *12-13.  A wavier is knowing if "the

---

[4] The Report rightly recognized that a valid appeal waiver constitutes a procedural bar to habeas review, but then concluded that a "state court decision that invokes a procedural bar but then proceeds to address the merits of a claim can be reviewed in a federal habeas proceeding." R&R at 11 (citing *Harris v. Reed*, 489 U.S. 255 (1989)). In *Harris*, however, the Supreme Court held that when a state court expresses "explicit reliance on a state-law ground," such explicit reliance "preclude[s]" federal courts from "addressing [a] petitioner's claim." *Id.* at 266. *See also id.* at 263 ("[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar."). Indeed, the Court in *Harris* confirmed that "the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law," and that this doctrine accordingly "curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision." *Id.* at 264 n.10. The portion of *Harris* on which the Report relies—footnote 13—merely observed that on the record before the Court, the state court's "ambiguous reference to state law . . . [was] insufficient to demonstrate clearly whether the court intended to invoke waiver as an alternative [state-law] ground." *Id.* at 266 n.13. Numerous decisions following *Harris* have echoed the principle that when a state court clearly relies on an adequate and independent state ground to reject a claim, a federal court may not review that claim on habeas absent cause and prejudice for that procedural default—even if the state court also rules on the merits of the claim. *See, e.g., Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990) ("[W]e are barred from reaching the merits of [petitioner's] first three federal claims, under the ruling in *Harris* that federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim."); *Jones v. Burmudez*, No. 15-CV-8527 (PKC) (BCM), 2019 WL 1416985, at *1 (S.D.N.Y. Mar. 29, 2019) ("[H]abeas review is barred even if the state court supplied an alternative basis for its decision based on the merits."). Here, the Appellate Division clearly rested its denial of Martinez's Fourth Amendment claim on an adequate and independent state ground—the validity of his appeal waiver. Thus, even though the state court also denied Martinez's Fourth Amendment claim on the merits, this Court may only review his procedurally defaulted claim if Martinez shows cause and prejudice, and may not review it under § 2254.

In any event, even if Martinez's challenge to the validity of his appeal waiver is more properly assessed under § 2254—such as if, for instance, he raised a freestanding Fourteenth Amendment claim before the Appellate Division, the Appellate Division ruled on the constitutional merits of that claim via its waiver finding, and that claim was cognizable under § 2254—the Court would agree with Judge Cave's conclusion that the state court's ruling that Martinez's waiver was valid was not an objectively unreasonable application of federal law for the same reasons as those stated herein.

defendant fully understood the potential consequences of the waiver," *United States v. Castillo*, 303 F. App'x 989, 990 (2d Cir. 2008), and it is voluntary "if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally," *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988).[5]

The Court agrees with Judge Cave's finding that Martinez's waiver of the right to appeal was knowing and voluntary.  Martinez argues in his objections that he "did not have an interpreter present when [he] signed the plea agreement" and that the trial court "failed to explore [his] relevant background to demonstrate [his] understanding of the waiver."  Objections at 2.  These theories, however, are belied by the record.  As Judge Cave noted, Martinez was provided with a Spanish-language version of the appeal waiver.  *See* Plea Hearing Tr. at 3:3-5 ("The waiver of [the] right to appeal, I gave it to him earlier this morning in Spanish.  It is a waiver in Spanish."). The official transcript of the plea proceeding also indicates that a Spanish interpreter was present. *Id.* at 2:2.  Moreover, the written waiver that Martinez signed in open court, *id.* at 3:11-12, explicitly stated (as translated into English): "I understand that my right to appeal is separate and distinct from the rights automatically forfeited upon a guilty plea."  State's MOL at 6 n.3.[6]  Finally, the court conducted the following colloquy specific to the waiver:

> [THE COURT:] This morning, did you sign a document entitled waiver of the right to appeal?
> THE DEFENDANT: Yes.
> THE COURT: Did you discuss it with your attorney before signing it?
> THE DEFENDANT: Yes.

---

[5] Courts occasionally use the term "intelligent" in place of "knowing," or use all three terms. *See, e.g.*, *Burvick v. Brown*, No. 10-CV-5597 (JFB), 2013 WL 3441176, at *7 (E.D.N.Y. July 9, 2013).  But the inquiry into "intelligence" is the same as the inquiry into "knowingness": that is, whether "the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way." *Miller*, 848 F.3d at 1320.  Accordingly, the same analysis applies whether the term "knowing" or "intelligent" is used.

[6] Although Respondent has not provided the original Spanish waiver or a translated copy, Martinez does not contend that Respondent's translation of the waiver in its brief is inaccurate.

THE COURT: Did you understand what you were signing?
THE DEFENDANT: Yes.
THE COURT: Did you sign it voluntarily?
THE DEFENDANT: Yes.
THE COURT: You understand that once the case is finished, you won't be able to take this case — once you're sentenced, you won't be able to take the case to a higher court seeking to raise errors or to change the agreement or to raise other issues?
THE DEFENDANT: Yes.

Plea Hearing Tr. at 9:1-17.  Importantly, this colloquy occurred after the colloquy regarding Martinez's guilty plea and the consequences of that plea.

In sum, the record indicates that Martinez's appeal waiver was knowing and voluntary. *See, e.g.*, *United States v. DeJesus*, 219 F.3d 117, 121 (2d Cir. 2000) (holding that an appeal waiver was knowing and voluntary when, among other things, the trial judge held a similar colloquy with the defendant).  Martinez has therefore not established cause for his procedural default.[7]  Nor has he shown that "failure to consider the claim would result in a fundamental miscarriage of justice," a finding that is generally reserved for "an 'extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent.'"  *Foster v. Miller*, No. 04-CV-7990 (BSJ) (JCF), 2007 WL 1893726, at *9 (S.D.N.Y. June 29, 2007) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).  Accordingly, the Court may not review his Fourth Amendment claim on habeas.

---

[7] Even had Martinez established cause, he could not establish prejudice because, as the Report correctly notes, his Fourth Amendment claim is not cognizable on habeas review.  Review of Fourth Amendment claims in habeas petitions "w[ill] be undertaken in only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process."  *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992).  Martinez does not object to Judge Cave's findings that the state courts provided a facially adequate corrective procedure to redress any alleged Fourth Amendment violations and that there is no evidence of a breakdown in the state court process.  Nor does this Court find any clear error in that determination.  *See id.* at 70 n.1 (noting that New York's corrective procedures to remedy Fourth Amendment violations have been deemed "facially adequate"); *Washington v. Walsh*, No. 10-CV-7288 (RJS), 2015 WL 4154103, at *18 (S.D.N.Y. July 9, 2015) (explaining that an "unconscionable breakdown" in a facially adequate corrective mechanism occurs only "where the petitioner demonstrates that no state court conducted a reasoned method of inquiry into relevant questions of fact and law, or any inquiry at all into the Fourth Amendment claim").

**CONCLUSION**

The Court has reviewed all remaining portions of the Report not previously discussed for clear error and finds none.  The Court thus adopts the recommendation set forth in the Report and denies Martinez's petition for a writ of habeas corpus with prejudice.  It declines to issue a certificate of appealability, as Martinez has not "made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Clerk of Court is respectfully directed to mail a copy of this Order to Martinez and to close this case.

SO ORDERED.

Dated: September 1, 2022
New York, New York

                                                 _____
                                                 Hon. Ronnie Abrams
                                                 United States District Judge